FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2019 JUN -6 PM 3:03
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

```
REHRIG PACIFIC COMPANY,         *
                                *
     Plaintiff,                 *
                                *
     v.                         *   CV 318-055
                                *
POLYMER LOGISTICS (ISRAEL),     *
LTD. and POLYMER LOGISTICS,     *
INC.,                           *
                                *
     Defendants.                *
```

O R D E R

Before the Court is Defendants Polymer Logistics (Israel), Ltd. ("Polymer Israel") and Polymer Logistics, Inc.'s ("Polymer US" collectively "Polymer") motion to transfer venue. (Doc. No. 19.) Polymer's motion seeks to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Polymer's motion to transfer is **GRANTED**.

I. BACKGROUND

Plaintiff Rehrig Pacific Company ("Rehrig") filed this action alleging patent infringement against Polymer for its "RPC Eggs" crates (the "Accused Products"), a reusable and collapsible container used for storage, shipping, and retail display in the egg industry. (See Am. Compl., Doc. No. 13, ¶¶ 26-39.) Rehrig is

a Delaware corporation with its principal place of business in Los Angeles, California, yet, it filed this action in the Dublin Division of the Southern District of Georgia. (Id. ¶ 1.) While Polymer U.S. maintains a facility in Dublin, it is a Delaware corporation with its principal place of business in Tampa, Florida.[1] (Id. ¶ 3; Defs.' Br., Doc. No. 19-1, at 3 n.2.) Polymer Israel is an Israeli corporation with its principal place of business in Hod Hasharon, Israel. (Am. Compl. ¶ 2.) Although Polymer Israel is a foreign corporation, it was registered to do business in California until August 3, 2018, one week after this lawsuit was filed. (Decl. of Gideon Feiner ("Feiner Decl."), Doc. No. 42-1, ¶ 2.)

Rehrig alleges that Polymer infringed five of its patents by making, using, importing, selling, and offering for sale the Accused Products that "blatantly copy[] patented features" of Rehrig's own reusable egg containers. (Id. ¶ 34-50.) Polymer US, unlike Rehrig, maintains its own facilities that receive used egg containers from its customers, wash the containers, and ship the sanitized containers back to customers to be reused. (See First Decl. of Nany Walsh ("First Walsh Decl."), Doc. No. 19-2, ¶ 7.) Polymer US maintains five wash facilities in the United States,

---

[1] Rehrig alleged Polymer US's headquarters was in Riverside, California, but Polymer US subsequently clarified that it moved its headquarters from Riverside to Tampa in 2017. (Defs.' Br. at 3 n.2.)

2

including one in Dublin, Georgia and one in Riverside, California, which is its "largest and busiest" facility. (Id. ¶¶ 7-8.)

Polymer Israel and Polymer US are separate corporations, each controlled by distinct boards of directors and executive teams. (See First Decl. of Danit Cohen ("First Cohen Decl."), Doc. No. 17-2, ¶¶ 9-15.) Polymer Israel researched, developed, designed, and manufactured the Accused Products in Israel. (Second Decl. of Danit Cohen ("Second Cohen Decl."), Doc. No. 19-3, ¶¶ 2-3.) Polymer Israel sells the Accused Products to Polymer US in what each contends are arm's length transactions.[2] (First Cohen Decl. ¶ 15; Second Decl. of Nancy Walsh ("Second Walsh Decl."), Doc. No. 17-3, ¶ 9.) Polymer US then contracts with customers in the United States to lease the Accused Products. (First Walsh Decl. ¶ 2.) Polymer Israel does not control how, where, and to whom Polymer US distributes the Accused Products. (Feiner Decl. ¶ 4.) Polymer Israel's CEO, however, has visited California on multiple occasions to assist Polymer US's business development, including formulating sales and marketing strategies and attending meetings with customers. (Id. ¶ 5.)

After Rehrig amended its complaint, Polymer filed a motion to dismiss for failure to state a claim (doc. no. 18) and a motion to transfer venue (doc. no. 19). Polymer Israel also filed a motion

---

[2] Polymer Israel imports the Accused Products through the Port of New York. (Feiner Decl. ¶ 9.)

to dismiss for lack of personal jurisdiction, with an alternative request to transfer the action to the Central District of California in lieu of dismissing it from the case. (Doc. No. 17.) Because the Court concludes that transfer under Section 1404(a) is proper, as discussed below, I will not take up the other two pending motions.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Consistent with the statute, a party moving under Section 1404(a) to transfer venue must first show the action could have been brought in the proposed transfer forum. 28 U.S.C. § 1404(a); Aeroquip Corp. v. Deutsch Co., 887 F. Supp. 293, 294 (S.D. Ga. 1995).

The moving party must then prove that transfer will serve the convenience of the parties and witnesses as well as the interests of justice. See Internap Corp. v. Noction Inc., 114 F. Supp. 3d 1336, 1339 (N.D. Ga. 2015). Nine factors guide the Court's analysis on this issue: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel

4

the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Id.; see also Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

A district court is given wide discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation omitted). However, a court may not simply "shift inconvenience from the defendant to the plaintiff." Internap, 114 F. Supp. 3d at 1339.

### III. DISCUSSION

Polymer moved under Section 1404(a) to transfer this case from the Southern District of Georgia to the United States District Court for the Central District of California. (Doc. No. 19.) In essence, Polymer contends the parties have a limited connection to this District, California would be more convenient for potential witnesses, and the facts underlying the alleged infringement did not occur in this District.

5

## A. The Transferee Forum

The Court must first determine whether Rehrig could have brought this action in the Central District of California. An action may have been brought in a proposed transferee court if: "(1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." Suomen Colorize Oy v. DISH Network L.L.C., 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011).

Quite obviously, the Central District of California would have subject matter jurisdiction over this case the same as in this Court because the cause of action, patent infringement, arises under federal law. 28 U.S.C. §§ 1331, 1338. The Central District of California would also have personal jurisdiction over both Polymer entities. Polymer US maintains its "largest and busiest" wash facility in Riverside, California and formerly maintained its headquarters there. (First Walsh Decl. ¶ 8.) Polymer US's CFO admits that the company has maintained a physical presence in California since 2007. (Id.)

Polymer Israel, by its own admission, is also subject to personal jurisdiction in California. Polymer Israel, incorporated and headquartered in Israel, has limited contacts with the United States, with no employees or offices in this country. However,

6

some of Polymer Israel's marketing and sales of the Accused Products were conducted in California, providing sufficient minimum contacts for the Central District of California to have specific jurisdiction over Polymer Israel. (See Feiner Decl. ¶ 5.) Moreover, until August 3, 2018, one week after Rehrig filed its complaint, Polymer Israel was registered to do business in California. (Id. ¶ 2.) Finally, although not determinative in of itself, Polymer stated it will not challenge personal jurisdiction or venue in the Central District of California. (Defs.' Br. at 7 n.7.)

Regarding venue, 28 U.S.C. § 1400(b) requires patent suits to be filed in the judicial district where either the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. Unlike other types of federal actions, patent infringement cases require venue to be proper for each individual defendant. See Stontite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 567 (1942). Although Section 1400(b) is the exclusive provision controlling venue for patent actions, the Supreme Court has held that "suits against aliens are wholly outside the operation of all the federal venue law, general and special." Brunette Mach. Works Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 714 (1972). Thus, venue is proper over a foreign corporate defendant in any judicial district, even in patent infringement actions. Id.; 28 U.S.C. § 1391(c)(3).

7

Polymer Israel, a foreign defendant, may be sued in the Central District of California.³ Similarly, venue is proper with respect to Polymer US because it maintains a regular and established place of business — its Riverside wash facility — and has committed acts of infringement by selling and marketing the Accused Products in California. Finally, both Polymer entities are amenable to process in the Central District of California, in fact, Polymer Israel was served there in this case. (Doc. No. 6.) In sum, this action could have been brought in the Central District of California.

**B. Convenience Factors**

The Court next turns to the nine Section 1404(a) factors to determine whether transfer to the Central District of California is warranted. At the outset, the Court notes that the parties' relative means and the transferee forum's familiarity with the governing law are both neutral factors, as conceded by all parties.

1. Witness Convenience

Convenience for potential witnesses is perhaps the most important factor in considering a motion to transfer, with a specific focus on key witnesses. <u>Internap</u>, 114 F. Supp. 3d at

---

³ Polymer Israel implicitly recognizes venue would be proper in any judicial district based on its decision to move to transfer venue under Section 1404(a) for convenience, rather than under Section 1406(a), which is invoked where venue is improper in the plaintiff's chosen forum.

8

1340; Huntley v. Chi. Bd. of Options Exch., 132 F. Supp. 3d 1370, 1372-73 (N.D. Ga. 2015). There is an important distinction between party and non-party witnesses because "party witnesses are assumed to be more willing to testify in a different forum than non-party witnesses." Internap, 114 F. Supp. 3d at 1340 (internal quotation omitted). Accordingly, the convenience of non-party witnesses carries more weight in the transfer analysis.

The parties focus on several witnesses who invented or prosecuted Rehrig's five patents at issue. William P. Apps, Cynthia R. Meissen, and Jon Kalin[4] are all current Rehrig employees living or working in the Atlanta area. John Bobel Zelek, Roger S. Hsu, and Konstantine J. Diamond each reside in the Los Angeles area, and of those three only Mr. Hsu is a current Rehrig employee. Rehrig also identified its Atlanta area customer Toscoa, whose employees may provide relevant testimony. The remaining named witnesses reside in Houston, Chicago, Pennsylvania, and Michigan. Finally, while Polymer does not identify any specific individuals, it contends all its potential witnesses reside in Israel, Los Angeles, or Tampa.

The Court concludes that this factor supports transfer. Three of the four Atlanta witnesses are employees of Rehrig, whereas two of the three Los Angeles witnesses are non-party witnesses, whose

---

[4] Mr. Kalin works on the "sales/customer side" of Rehrig's operation but is nevertheless a key witness for Rehrig. (Pl.'s Br. at 6.)

9

convenience is given more weight. Further, although Atlanta is undoubtedly closer to Dublin than it is to Los Angeles, Atlanta is not part of the Southern District of Georgia. As it stands, Rehrig has not named any witnesses within this District. Moreover, none of Polymer's witnesses reside in this District, but at least some are located in the Central District of California. Altogether, the fact that there are more non-party witnesses within the Central District of California, and no witnesses within Southern District of Georgia favors transfer.

2. Location of Relevant Documents and Ease of Access to Sources of Proof

In patent infringement cases, most of the relevant evidence comes from the accused infringer, and, thus, the place where the defendant's documents are kept favors transfer to that forum. See In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009). Polymer Israel, as the entity that researched, designed, developed, and manufactured the Accused Products, maintains its documents in Israel, which renders the location of those documents a non-factor. Polymer US maintains its electronic files on a server in Riverside, California, favoring transfer. (First Walsh Decl. ¶ 6.) The Court recognizes, however, that the ease of electronic document production significantly reduces the importance of where files are located.

Other sources of proof, such as product samples, weigh marginally in favor of transfer. As to the Accused Products, they are used nationwide and both this District and the Central District of California have wash facilities containing the Accused Products. But, the record contains no evidence that Rehrig has any of its own products in this District. Unlike the Central District of California, Rehrig has no physical locations here and only identified customers in the Atlanta area — which is not a part of this District — that use its products. However, the apparent collapsible and portable nature of both parties' products make transportation to any courthouse relatively easy. Overall, the ease of electronic discovery and transportation of the products at issue make this a neutral factor.

3. Party Convenience

Rehrig is a Delaware corporation with its headquarters in Los Angeles. As Polymer points out, Rehrig's headquarters is located only six miles from the Central District of California's Los Angeles courthouse. (Decl. of Joseph D. Rutkowski ("Rutkowski Decl."), Doc. No. 19-4, ¶ 20, Exs. 3, 19.) Further, Rehrig has no offices or any other apparent connection to this District. However, Rehrig made a deliberate choice to forego litigating in its home district and instead filed this case in Dublin. As

discussed more fully below, the Court must give some deference to that decision.

Polymer Israel will be inconvenienced regardless of whether this case is litigated in Georgia or California. As Rehrig states, "[i]t's a long trip either way." (Pl.'s Br., Doc. No. 25, at 8.) Polymer US maintains facilities in this District and in the Central District of California. Until 2017, Polymer US was headquartered in Riverside, California,[5] but has since relocated to Tampa, Florida. (Defs.' Br. at 3 n.2.) While Polymer US's headquarters is closer to this District, its significant presence in the Central District of California makes it only slightly more inconvenient to litigate in that forum.

Overall, even recognizing that Rehrig's choice of forum shows that it does not mind the inconvenience of litigating in Dublin, the Court cannot ignore Rehrig's proximity to the Los Angeles courthouse and its substantial connections to that area, particularly in light of its lack of any connection to this District. See Aeroquip Corp., 887 F. Supp. at 295 (transferring case from Georgia to California based, in part, on Ohio plaintiff not having any connection to Georgia and the defendant and its accused product's substantial ties to California). Accordingly, this factor weighs narrowly in favor of transfer.

---

[5] Rehrig's Amended Complaint lists Polymer US's Riverside office as its principal place of business. (Am. Compl., ¶ 3.)

12

### 4. Locus of Operative Facts

In patent infringement cases, the locus of operative facts is where the defendant designed, developed, manufactured, marketed, and sold the alleged infringing product. Internap, 114 F. Supp. 3d at 1341 (citing Polyform A.G.P. Inc. v. Airlite Plastics Co., 2010 WL 4068603, at *5 (M.D. Ga. Oct. 15, 2010)). Many courts refer to this location as the "center of gravity," that being "where the accused product was designed and developed." Trace-Wilco, Inc. v. Symantec Corp., 2009 WL 455432, at *2-3 (S.D. Fla. Fed. 23, 2009) (collecting cases). Also relevant is the location where the defendant made marketing and sales decisions, but not necessarily "just the location of any particular sales activity." Id. at *3 (internal quotation omitted).

Here, the Accused Products were researched, designed, developed, and manufactured in Israel, and the sales and marketing decisions were made in Israel, California, and Florida. (Second Cohen Decl. ¶¶ 2-3, 6.) So, while the development of the Accused Products did not occur in the proposed transferee forum, much of the sales and marketing decisions did occur there. Rehrig argues that sales and marketing occurred in Florida, not California. However, prior to October 2017 — less than one year before this case was filed — both Polymer Israel and Polymer US made sales and marketing decisions in California. It was only when Polymer US moved its headquarters to Tampa that Polymer shifted its sales and

13

marketing to Florida. Further, because the development and manufacture of the Accused Products did not occur in an available transferee forum, the location where much of the sales and marketing decisions were made becomes the next best locus of operative facts.

Rehrig argues some of its patents were developed in the Atlanta area, shifting the locus of operative facts to the "Atlanta/Dublin area." (Pl.'s Br. at 9-10.) Yet, the location of patent development is not the relevant inquiry, rather it is the location where the defendant developed its products and engaged in other infringing activities. See Internap, 114 F. Supp. 3d at 1341 ("Courts look to the location [of] . . . the design, development, marketing, manufacture, and sale of the *defendant's accused product* to determine the locus of operative facts." (emphasis added)). Moreover, even assuming Rehrig's patent development activity in Atlanta was relevant, that activity did not occur in this District. Cf. Polyform, 2010 WL 4068603, at *5 ("[T]he Court cannot comprehend how manufacturing activities in Florida should be considered activities in the Middle District of Georgia for purposes of determining whether the locus of operative facts is in the Middle District of Georgia or the District of Nebraska.").

Finally, although the Accused Products are serviced at the Dublin wash facility, there is no development, manufacturing,

14

sales, or marketing occurring at that facility. Even so, Polymer US's Riverside wash facility sees more activity than the Dublin location and has been in service for nearly a decade longer. Moreover, Georgia is not a source of substantial revenue for Polymer US, as it derives only about 2% of its revenue from customers in the state. (Second Walsh Decl. ¶ 3.) At bottom, the facts underlying the alleged infringement occurred in Israel, California, and Florida; not in Georgia. For that reason, this factor favors transfer.

5. Availability of Process to Compel Witness Attendance

As shown above, more key non-party witnesses are in California than in Georgia. Moreover, Rehrig concedes that this factor weighs slightly in favor of transfer. (Pl.'s Br. at 11.) The Court agrees.

6. Plaintiff's Choice of Forum

Generally, courts give considerable deference to a plaintiff's choice of forum, and, consequently this factor weighs in favor of transfer. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). The relevant question is how much weight should be afforded. "[W]here a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." Suomen Colorize

Oy, 801 F. Supp. 2d at 1338 (quoting Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007)). Further, where the operative facts underlying the cause of action did not occur in the forum, courts show less deference to a plaintiff's choice. Internap, 114 F. Supp. 3d at 1342; Capella Photonics, Inc. v. Cisco Sys., Inc., 2014 WL 3673314, at *6 (S.D. Fla. July 23, 2014); Laitram Corp. v. Morehouse Indus. Inc., 1994 WL 97819, at *4 (E.D. La. Mar. 21, 1994) ("[D]istrict courts may disregard plaintiff's choice of forum in cases involving claims of patent infringement.")

Accordingly, while this factor disfavors transfer, its weight is substantially muted by the fact that Rehrig is not incorporated or headquartered in Georgia nor does it have any apparent connection to this District. Moreover, as previously discussed, the locus of operative facts is not Dublin. The Accused Products were developed and manufactured in Israel, and they are marketed and sold from Israel, California, and Florida. Again, the Court struggles to see what the connection is to this District beyond Polymer US's Dublin facility, which does not develop, manufacture, market, or sell the Accused Products.

7. Interests of Justice

This factor most strongly favors transfer for two reasons. First, the Court has serious doubts over whether it may exercise

16

personal jurisdiction over Polymer Israel based on a review of its motion to dismiss under Rule 12(b)(2). (See Doc. Nos. 17, 26, 40.) Polymer Israel is not registered to do business in Georgia; has no offices, employees, or bank accounts in the state; and it pays no taxes here. (First Cohen Decl. ¶¶ 3-7.) Despite Rehrig's attempts to treat Polymer Israel and Polymer US as a single entity, the two recognize all corporate formalities and must be treated as distinct. See Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."). Polymer Israel and Polymer US maintain distinct executive teams, separate boards of directors,[6] each manages its own day-to-day activities, and they deal in arm's length transactions. (See First Cohen Decl. ¶¶ 9-15; Feiner Decl. ¶ 13.)

Further, Polymer Israel does not manufacture, sell, or import any of the Accused Products in Georgia. While Rehrig introduced evidence to show Polymer Israel imports goods through the Savannah

---

[6] While Polymer US and Polymer Israel maintain separate boards of directors, they do share two directors. (Feiner Decl. ¶ 13.) Even so, each board has an additional two distinct directors. (Id.) Further, sharing board members cannot, by itself, allow a court to use a subsidiary's in-state contacts to supply personal jurisdiction over the foreign parent corporation. See Consol. Dev. Corp., 216 F.3d at 1293 ("Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business *and the subsidiary has preserved some semblance of independence from the parent*, jurisdiction over the parent may not be acquired on the basis of local activities of the subsidiary." (internal quotation omitted) (emphasis added)).

17

Port, Polymer Israel subsequently clarified that all shipments of the Accused Products are sent through the Port of New York. (Feiner Decl. ¶ 9.) Consistent with the Polymer entities dealing in arm's length transactions, Polymer Israel does not control where Polymer US distributes the Accused Products, who it distributes to, or dictate how Polymer US uses the Accused Products. (Id. ¶ 4.) Suffice it to say, Polymer Israel has little to no contacts with Georgia, making the exercise of personal jurisdiction over it by this Court problematic.

Moreover, because Polymer Israel researched, designed, developed, and manufactured the Accused Products, the possibility of Rehrig obtaining full relief would be significantly impaired if the Court dismisses Polymer Israel instead of transferring the case to the Central District of California, which, by Polymer Israel's own admission, would have personal jurisdiction. Not only does transfer to California serve Rehrig's interests in obtaining full relief, it prevents the parties and the Court from spending any further resources resolving jurisdictional issues, including having to conduct jurisdictional discovery.

Courts routinely transfer venue under Section 1404(a) where there is a substantial question as to whether a defendant is subject to their jurisdiction. See, e.g., Convergence Tech. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 643 (E.D. Va. 2010) (transferring from Virginia to California in Virginia plaintiff's

18

patent infringement suit against Taiwanese manufacturer, Hong Kong distributor, and California distributor); Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505, 511 (S.D.N.Y. 2001); Datasouth Comput. Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 453 (W.D.N.C. 1989); Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry & Assocs., 454 F. Supp. 418, 422-23 (S.D.N.Y. 1978).

Second, the Central District of California has a greater interest in protecting Rehrig's patents from infringement because it is headquartered in that district. While Rehrig correctly points out that this Court has a significant interest is abating patent infringement occurring in the District, the Accused Products are used nationwide, including in the Central District of California. Because of the Accused Products' nationwide reach, all districts share this interest. However, the Central District of California holds the additional interest in protecting one of its local corporations from alleged patent infringement. Considering all the circumstances, the Court concludes the interests of justice would be served by transfer to the Central District of California.

## IV. CONCLUSION

As discussed above, Polymer has carried its burden under 28 U.S.C. § 1404(a) by showing this action could have been brought in the Central District of California and that the nine Section

19

1404(a) factors weigh in favor of transfer. The convenience of the witnesses and the parties as well as the Court's doubts about its ability to exercise personal jurisdiction over Polymer Israel, when combined, demonstrate that transfer is proper. Therefore, Polymer's motion to transfer (doc. no. 19) is **GRANTED,** and it is **ORDERED** that this case be **TRANSFERRED** to the United States District Court for the Central District of California.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of June, 2019.

_____
UNITED STATES DISTRICT JUDGE